IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                                Case No. 2:18-cr-48

Angela Faber

### ORDER

    Defendant Angela Faber was charged by complaint on January 22, 2018, with a drug conspiracy involving oxycodone under 21 U.S.C. §846 and money laundering in violation of 18 U.S.C. §1956(a)(1). Doc. 1. Defendant was arrested on January 24, 2018, and was released on bond on January 29, 2018. Doc. 7. On February 13, 2018, she failed to appear at a bond violation hearing, see Doc. 13, and a warrant was issued. An indictment was returned on February 22, 2018. Doc. 13. Defendant was arrested on March 6, 2018, and was detained pending trial. Docs. 23, 27. She subsequently entered a guilty plea to Count 1, conspiracy to distribute and to possess with the intent to distribute oxycodone, and Count 2, money laundering. Defendant was sentenced to a term of incarceration of 48 months on Counts 1 and 2, to run concurrently, and to concurrent 3-year terms of supervised release. Judgment was entered on October 24, 2018. Doc. 44. The website for the Bureau of Prisons ("BOP") indicates that her current release date is July 3, 2021. See https://www.bop.gov/inmateloc/ (last visited December 7, 2020). However, the court has been informed by the Probation Office that the BOP plans to release defendant to a halfway house on February 4, 2021.

    On October 15, defendant filed a motion for compassionate release from imprisonment under 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act of 2018, arguing that she is at risk

of serious illness due to COVID-19 in light of her medical conditions.  Doc. 48.  On October 16, the court entered an order directing the government to respond to the motion by November 9, 2020.  Doc. 49.  On November 10, 2020, defense counsel moved for an order granting defendant's motion because the government did not file a response by November 9th.  Doc. 51.  The government did file a response in opposition to the motion on November 10, 2020, only one day late.  Doc. 52.  Defendant filed a reply on November 13, 2020.  Doc. 53.

      The motion for an order granting defendant's motion for compassionate release on the ground that the government did not file a response on November 9th is denied.  The court notes analogous authority in the context of civil litigation which holds that even though a party does not respond to a summary judgment motion, the district court cannot use that as a reason for granting summary judgment without first examining all the materials before it under Fed. R. Civ. P. 56(c).  F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 630 (6th Cir. 2014)(citing Smith v. Hudson, 600 F.2d 60, 65 (6th Cir. 1979).  This is because a party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant.  Id. (citing Hudson, 600 F.3d at 64).  In this case, a defendant seeking a sentence reduction under §3582(c)(1)(A) bears the burden of proving entitlement to compassionate release.  United States v. Lambert, No. 1:16-cr-090, 2020 WL 6741311, at *2 (S.D. Ohio Nov. 17, 2020). Even if the government had filed no response, this court would still be required to consider the materials in the record before

ruling on the motion. In addition, the government substantially complied with the briefing schedule, and some leeway is warranted here due to the workplace challenges posed by COVID-19.

Under 18 U.S.C. §3582(c)(1)(A)(i), a motion for reduction in sentence for "extraordinary and compelling reasons" can be filed with the court if the defendant has exhausted his administrative remedies. This exhaustion requirement is not jurisdictional, but is a mandatory condition which must be enforced if the government timely objects to the failure to exhaust. United States v. Alam, 960 F.3d 831, 833-834 (6th Cir. 2020). The government does not dispute that defendant has exhausted her administrative remedies and agrees that this court can rule on the merits of defendant's motion.

I. Standards for Compassionate Release

The court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. §3582(c)(1)(A)(i). The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A).[1] District courts may deny relief under §3582(c)(1)(A) based upon the court's discretionary balancing of the §3553(a) factors even if

---

[1] Section 3582(c)(1)(A) further provides that the court must find "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. §3582(c)(1)(A). However, the Sixth Circuit has held that the policy statement contained in United States Sentencing Guidelines §1B1.13 do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define "extraordinary and compelling" without consulting the policy statement. See United States v. Jones, __ F.3d __, 2020 WL 6817488, at *7, *9 (6th Cir. Nov. 20, 2020).

3

extraordinary and compelling reasons would otherwise justify relief. United States v. Ruffin, 978 F.3d 1000, 1008 (6th Cir. 2020). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

II. Defendant's Request for Release

Defendant argues that her sentence should be reduced because of the dangers posed by COVID-19. However, §3582(c)(1)(A), as amended by the First Step Act, "does not constitute a get-out-of-jail card." United States v. Brady, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020). Rather, "compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry ... made in the 'unique circumstances' and 'context' of each individual defendant." Id., citing United States v. Shakur, No. 82 CR 312 (CSH), 2020 WL 1911224, at *1 (S.D.N.Y. Apr. 20, 2020) and United States v. Hart, 17 Cr. 248 (VSB), 2020 WL 1989299, at *6 (S.D.N.Y. Apr. 27, 2020)).

Defendant argues that she has a serious risk of complications from COVID-19 due to her medical conditions.[2] Defendant is 39

---

[2]Defense counsel indicates that defendant's medical records are available, but did not file them with the record. The court concludes that it is not necessary to review these records, particularly because the government does not dispute that defendant has the medical conditions discussed in her motion.

4

years old. She claims that she is particularly at risk due to obesity (she is 5'5" tall and weighs 187.6 pounds). Defendant further states that she has chronic HCV (hepatitis C), a type of liver disease. She notes that, according to the Centers for Disease Control ("CDC"), these conditions are factors which may increase the risk of negative outcomes from a COVID-19 infection.

According to the presentence investigation report ("PSR"), defendant sustained multiple fractures in an auto accident in 2015, and suffered a serious injury to her arm in an auto accident in 2016. She does not claim any disabilities as a result of these injuries, but does contend that the multiple blood transfusions she received following the 2015 accident compromised her immune system. Defendant states that during her incarceration at FCI Hazelwood, she has had dermatophytosis (ringworm) in 2018, tinea cruris, trichomoniasis, acute apical periodontitis (tooth disease) and a yeast infection in 2019, and an ear infection, dermatitis (possibly psoriasis), dysuria, a vaginal infection, a urinary tract infection, and another yeast infection in 2020. There is no evidence that defendant is currently suffering from any of these infections.

The government acknowledges that defendant's obesity and hepatitis C are conditions which, according to the CDC, may place persons at increased risk of severe illness from COVID-19, but notes that her other conditions are identified by the CDC as presenting an increased risk. See https://www.bop.gov/coronavirus (last visited December 7, 2020). Defendant acknowledges that a compromised immune system due to blood transfusions is not specifically listed in the CDC guidelines as posing an increased

5

risk of COVID-19, but argues that those guidelines do recognize that many conditions and treatments can weaken a person's immune system.

However, the government notes that there has been a low incidence of COVID at FCI Hazelton, located in Bruceton Mill, West Virginia, where defendant is incarcerated. The BOP reports that there are currently 2 inmate and 6 staff cases of COVID-19, that there have been no inmate or staff deaths, and that 6 inmates and 16 staff have recovered since the beginning of the pandemic. See https://www.bop.gov/coronavirus (last visited December 10, 2020). Defendant argues that the BOP has not accurately reported cases of COVID-19 in the institutions, including FCI Hazelton, citing various news articles. However, there is no evidence before the court to discredit the current statistics provided by the BOP for FCI Hazelton.

Defendant indicates that if she is released, she would live with her mother in Columbus, Ohio. The Ohio Department of Health has reported that there have been 65,073 COVID-19 cases in Franklin County, Ohio. In the zip code where defendant's mother resides, 2,046 cases of COVID-19 have been reported. See https://www.coronavirus.ohio.gov (last visited December 10, 2020).[3] In contrast, there have been 800 confirmed cases, 103 probable cases and 15 deaths in Preston County, West Virginia, where FCI Hazelton is located. See https://dhhr.wv.gov/COVID-

---

[3]This court can take judicial notice of the records of state agencies. See Disabled Rights Action Committee v. Las Vegas Events, Inc., 375 F.3d 861, 866 n. 1 (9th Cir. 2004)(citing Kottle v. Northwest Kidney Centers, 146 F.3d 1056, 1064 n. 7 (9th Cir. 1988)(state health department records were properly judicially noticed)).

6

19/Pages/default.aspx (last visited December 10, 2020). The defendant's risk of infection may be no worse in prison than the risk she would face if she is released to reside in Franklin County.

The court concludes that defendant has not shown that her medical conditions, viewed in the context of COVID-19, constitute an "extraordinary and compelling reason" for her early release.

III. §3553(a) Factors

The court is also required to consider the relevant factors in §3553(a). The defendant was sentenced to a term of incarceration of 48 months. This sentence was the result of a departure and variance which yielded a sentence substantially below the guideline range of 87 to 108 months. This case involved a serious drug conspiracy offense. Defendant also opened a bank account and used the account to launder drug proceeds. According to the PSR, defendant traveled to Florida to obtain prescriptions for oxycodone, a drug which leads to heroin addiction and overdose deaths, and brought 1,680 pills back to the Central Ohio area. Taking into account the amount of money laundered by the defendant, the total amount of relevant conduct attributed to the defendant was 15,810 30-milligram oxycodone pills. Although defendant received a minor role reduction, the court found that her involvement in the offense was extensive. See Doc. 45.

As to the history and characteristics of the defendant, the defendant has submitted evidence that she has completed several classes at the institution, including a 12-hour drug program. The court has considered defendant's efforts towards post-offense rehabilitation. The court has also considered defendant's letters,

and has reviewed the information concerning her personal history contained in the PSR. The PSR reveals that defendant had a troubled childhood which included sexual abuse. She also has a long history of substance abuse, including alcohol, marijuana, opiates, heroin and cocaine, which contributed to her involvement in the offenses in this case.

Nonetheless, as this court noted at defendant's sentencing hearing, defendant's past criminal record is serious. The PSR reveals that defendant's record includes theft offenses in 2008, 2009 and 2001, attempted robbery in 2011, possession of criminal tools (a fraudulent check) in 2012, one petit theft charge in 2016 and two petit theft charges in 2017, and possession of drug abuse instruments (5 hypodermic needles) in 2017. In regard to the attempted robbery charge, the probation officer reported in the PSR that defendant and a codefendant lured two victims to a location where they could be robbed by defendant's boyfriend and another individual. The victim's vehicle was shot twice during the attempted robbery. Defendant was sentenced to a term of community control for this offense. While on probation, defendant tested positive for controlled substances, failed to attend a substance abuse assessment, and was declared an absconder.

The sentence imposed in this case was lenient considering the serious nature of the offense and the defendant's criminal record. The court noted at the time of sentencing, and continues to believe, that the chosen sentence was warranted because the sentences imposed for defendant's previous convictions were not sufficient to deter her from engaging in further criminal activity. See Doc. 45. Defendant served very little jail time as a result of

her state convictions. According to the defendant, she has now served almost 33 months, approximately 70 percent of the sentence of 48 months. Nonetheless, for the reasons stated above, the court concludes that the sentence of 48 months imposed in this case was necessary, and continues to be necessary, to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, deter the defendant from engaging in criminal conduct in the future, and protect the public from more crimes by the defendant.

The court also notes that the BOP plans to release defendant to a halfway house on February 4, 2021, less than two months from now. The court is reluctant to interfere with the plans the BOP has in place to assist defendant's transition back into society. Considering defendant's long history of substance abuse and her criminal record, defendant could greatly benefit from the structure provided by a residential re-entry center. The Probation Office has advised the court that if defendant's sentence is reduced to time served and the court orders a new term of supervised release with a condition that defendant reside in a halfway house, no space would be available until the middle of January at the earliest. The court further notes that compassionate release orders are frequently stayed for fourteen days to permit the BOP to comply with COVID-19 isolation protocols designed to protect the public. This could further delay any placement in a residential re-entry center.

Defendant argues that if her sentence is reduced, the court could place her on supervised release under the supervision of a probation officer. However, defendant had problems complying with

9

her conditions of supervision both during her term of probation following her attempted robbery conviction and while she was on pretrial release following her arrest on the charges in the instant case. A residential re-entry center would provide a higher level of supervision which would suit defendant's needs better than the less direct supervision which would be available if she is residing with her mother.

After weighing all of the relevant §3553(a) factors, the court concludes that these statutory factors warrant denying defendant's motion for a reduced sentence. Even assuming, arguendo, that defendant's health conditions are sufficient to constitute an "extraordinary and compelling reason" for a sentence reduction, that reason is outweighed by the statutory factors which predominantly militate against defendant's early release.

IV. Conclusion

In accordance with the foregoing, defendant's motions for compassionate release (Docs. 48 and 51) are denied.

Date: December 11, 2020                    s/James L. Graham
                                          James L. Graham
                                          United States District Judge